## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA

In re:
**ERIC KEIP THOMPSON,**                                   **Chapter 13**
        **Debtors.**                                      **Case No. 18-60017**

## MEMORANDUM OPINION

Before the Court is Eric Keip Thompson's objection to proof of claim 1-1. ECF Doc. No. 16. Mr. Thompson objects to the claim as secured because, according to Mr. Thompson, the secured creditor did not perfect is lien. The objection boils down to whether the creditor perfected an electronic lien on the vehicle prior to the bankruptcy petition.

Mr. Thompson filed a voluntary chapter 13 petition on January 8, 2018. *See* Pet., ECF Doc. No. 1. He filed a minimum filing. Eight days after filing his petition, he filed his schedules. On his Schedule E/F: Creditors Who Have Unsecured Claims, Mr. Thompson scheduled OneMain Financial ("OneMain") as an unsecured creditor with a total claim of $5,125 for a "Personal Loan." *See* Sch. E/F, ECF Doc. No. 9. Mr. Thompson notes that the account was opened in August 2016 and was "last active" November 1, 2017. *Id.*

Not long after he filed his schedules, on January 29, 2018, OneMain filed proof of claim number 1-1. OneMain's proof of claim asserts a claim amount of $4,771.23 based on "Money Loaned." The proof of claim also asserts that the claim is secured by a lien on a 2008 Nissan Altima. In support of the basis for perfection, OneMain attached two items to the proof of claim. First, OneMain provided a Disclosure Statement, Note and Security Agreement signed by Mr. Thompson and a representative of OneMain. Second, OneMain attached a one page summary entitled "Lien and Title Information" from a company called DealerTrack Collateral Management Services (the "DealerTrack Summary"). The DealerTrack Summary contains a "Financed Date" of August 30, 2016, and a "Perfected Date" of September 28, 2016. In the subsection, "Vehicle

and Titling Information," the DealerTrack Summary notes an "Issuance Date" of August 30, 2016, and a "Received Date" of September 28, 2016. This subsection also notes "ELECTRONIC" next to the "ELT/Paper" prompt.

Shortly thereafter, on February 15, 2018, Mr. Thompson objected to One Main's claim 1-1. *See* Obj., ECF Doc. No. 16. Mr. Thompson argues that the claim should be treated as an unsecured claim, because "[t]he security interest of the claim was not properly perfected prior to the filing date of the petition." The basis of this argument is that a certificate of title for the vehicle evidencing the lien was issued on February 2, 2018, marked as "ORIGINAL." Mr. Thompson noticed a hearing on the objection to claim to be held March 22, 2018.

OneMain by counsel responded to the objection. *See* Resp., ECF Doc. No. 18. In its response, OneMain asserts that it properly perfected its lien by a notation on the vehicle's electronic certificate of title by providing the lien information to DealerTrack Collateral Management Services[1] on September 28, 2016. *Id.* ¶ 14. OneMain attached to its response the DealerTrack Summary described above, which was attached to the proof of claim. *See* Ex. B, ECF Doc. No. 18-1. OneMain further pointed out that the Virginia Department of Motor Vehicles (the "DMV") permits a party to request a paper certificate to replace an electronic title upon request. *See* Resp. ¶ 15, ECF Doc. No. 18.

Mr. Thompson immediately replied to OneMain's response. *See* Reply, ECF Doc. No. 20. Mr. Thompson contends that OneMain's lien was not on the title at the time Mr. Thompson filed his bankruptcy and that the lien did not appear on the title (either on paper or electronically) until

---

[1] As OneMain notes, the Virginia Department of Motor Vehicles requires that "all banking and financial institutions that record 50 or more auto liens per calendar year . . . electronically transmit lien information to the Virginia Department of Motor Vehicles (DMV) through an approved service provider." *See* Va. Dep't of Motor Vehicles, Information Advisory – Virginia Electronic Lien Mandate (Sept. 18, 2014), *available at* https://www.dmv.virginia.gov/commercial/lien/elien_mandate.pdf (listing DealerTrack Collateral Management Services as one of the approved service providers).

the issuance of the certificate of title on February 2, 2018, a date twenty-five days following the filing of the petition. *Id.* ¶¶ 2, 11. Mr. Thompson asserts that "[t]he lien must physically appear on the Certificate of Title, issued electronically or physically by the Virginia DMV." *Id.* ¶ 3. Mr. Thompson argues that the first time the lien appeared on the title to the vehicle was at the issuance of the paper title postpetition. *Id.* ¶¶ 2, 11. Even if OneMain did in fact submit its information for an electronic lien to DealerTrack, Mr. Thompson argues that OneMain has no proof that DealerTrack ever submitted the information to the DMV. *Id.* ¶ 11. Without such proof, Mr. Thompson argues the security interest was not properly perfected as to the vehicle.[2] *Id.* ¶¶ 12, 15. Mr. Thompson did not point to an actual paper title which failed to show the lien, or provide any evidence supporting the assertion that prior to February 2, 2018, the title failed to disclose the lien, other than the fact that the title which shows the lien is labeled "ORIGINAL" and is dated February 2, 2018. The crux of Mr. Thompson's argument is that OneMain has presented no proof that Virginia DMV was aware of OneMain's interest in the vehicle prior to the filing of his bankruptcy petition. *Id.*

The Court held the noticed hearing on March 22, 2018. Counsel for Mr. Thompson and counsel for OneMain appeared and presented argument. *See* ECF Doc. No. 23. Counsel for OneMain informed the Court that he had obtained a paper file from the DMV which he wanted to review and potentially present to the Court. Accordingly, the Court continued the hearing to April 9, 2018, for a final hearing. On April 6, 2018, counsel for OneMain filed a supplemental response based on the DMV's paper file. The additional exhibit provided in the supplemental response was

---

[2] In support of this argument, Mr. Thompson relies on an "Electronic Lien and Title Program Agreement" form provided by the DMV, which notes that the "DMV will notify the Applicant electronically of the recording of a lien in favor of the Applicant." *See* Ex. 2, ECF Doc. No. 20. The form attached as Exhibit 2 has a form date of July 10, 2017. It is unclear to the Court whether this policy was in effect when OneMain submitted its lien information to DealerTrack.

an "Application for Supplemental and Transfer Liens of Replacement and Substitute Titles." *See* ECF Doc. No. 24-1. The application was date stamped indicating that the DMV received it on September 2, 2016. *Id.* The application was signed by the debtor and appears to request a transfer of a lien to OneMain on the 2008 Nissan. *Id.* The paper file discloses that the DMV received the paper application for a lien prior to the date DealerTrack allegedly sent the electronic request for a lien.

Counsel for Mr. Thompson and counsel for OneMain appeared and presented further argument at the continued hearing held on April 9, 2018. The parties both agreed that there was a security agreement and that OneMain followed the procedure to provide information to DealerTrack as required by the DMV's procedures to perfect its lien. Mr. Thompson, however, disputed whether DealerTrack timely provided, if at all, the information to the DMV to perfect the lien prior to the filing of the petition. Thus, the disagreement continued as to whether OneMain perfected its lien before or after Mr. Thompson filed his bankruptcy petition. The Court took the matter under advisement.

### *Burden-Shifting Framework for Objections to Proofs of Claim*

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). That is, once a proof of claim is filed, the underlying claim is deemed allowed. If a party in interest objects, the Court must then determine the amount and validity of the claim. *Id*. § 502(b).

The Fourth Circuit has constructed a burden-shifting framework for determining the validity of proofs of claim. *See generally In re Harford Sands Inc.*, 372 F.3d 637 (4th Cir. 2004). When a claimant properly files a proof of claim, it is prima facie evidence of the claim's validity and the amount the debtor owes. *In re Falwell*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); Fed.

R. Bankr. P. 3001(c), (f). If a claimant files a prima facie valid proof of claim, "[t]he burden . . . shifts to the debtor to object to the claim" and to "introduce evidence to rebut the claim's presumptive validity." *Harford Sands*, 372 F.3d at 640 (internal citations omitted). Any evidence the debtor offers in rebuttal must negate at least one fact necessary to the claim's legal sufficiency, "must be sufficient to demonstrate the existence of *a true dispute* and must have probative force equal to the contents of the claim." *Falwell*, 434 B.R. at 784 (emphasis in original).

OneMain filed a presumptively valid proof of claim, evidencing an allowed secured claim. Mr. Thompson filed an objection to claim which called into question the validity of the secured nature of OneMain's claim. OneMain filed a response challenging the objection and provided additional evidence to aid the Court in determining whether the objection should be sustained. The Court has considered the evidence and now turns to the Virginia Code to determine whether OneMain holds a perfected security interest in Mr. Thompson's motor vehicle.

*The Virginia Code: Noticing and Perfecting Liens on Motor Vehicles*

The Virginia Code addresses both the noticing and the perfection of security interests in motor vehicles in title 46.2 ("Motor Vehicles"), chapter 6 ("Titling and Registration of Motor Vehicles"). The resolution of the matter before the Court hinges heavily upon the text of the titling provisions.

Certificates of title are the vehicle for noticing liens on motor vehicles and accordingly "contain a statement of the owner's title and of all liens or encumbrances on the motor vehicle." Va. Code § 46.2-604. "A certificate of title, when issued by the [DMV] showing a security interest, shall be adequate notice to the Commonwealth, creditors, and purchasers that a security interest in the motor vehicle exists . . . ." *Id.* § 46.2-638. This Court has previously recognized the titling statute's emphasis on noticing:

> This court previously interpreted Virginia law and held that the primary function of noting liens on certificates of title is to put third parties on inquiry notice. *In re Wuerzberger*, 271 B.R. 778, 783–84 (Bankr. W.D. Va. 2002) (citing *Bain v. Commonwealth*, 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974) (stating that "the purpose of this statute is to provide a simple means for third party purchasers or creditors to ascertain the existence of a prior security interest") and *C.I.T. Corp. v. Guy*, 170 Va. 16, 25, 195 S.E. 659, 662 (1938) (stating certificates of title give notice to creditors and purchasers)). Liens noted on certificates of title are not proof positive of the true and exact nature of the interests claimed in the property; rather the notations provide a simple and localized warning to others that an interest is claimed in the property and that with further investigation the exact nature of that interest may be ascertained.

*Bank of N.Y. v. Leake (In re Wuerzberger)*, 284 B.R. 814, 824–25 (Bankr. W.D. Va. 2002).

The DMV, however, is not required to issue a paper certificate of title, "and, instead, shall create only the electronic record of such title to be retained by the [DMV] in its existing electronic title record system with a notation that no certificate of title has been printed on paper." Va. Code § 46.2-603(B). "[T]he [DMV] will be deemed to have issued a certificate of title when such title record has been created electronically as provided in this subsection." *Id.*

The filing of an application with the DMV for the recordation of a lien triggers the perfection of a lien on a motor vehicle. Because "[s]ecurity interests . . . must be shown on the certificate of title . . . the owner shall file an application with the [DMV] on a form furnished for that purpose, setting forth the security interests and whatever additional information the [DMV] may deem necessary." *Id.* § 46.2-637.[3] "If application for the registration or recordation of a security interest to be placed on a motor vehicle . . . is filed with the [DMV], it shall be deemed perfected as of the date of filing . . . ." *Id.* § 46.2-639; *see also Terry v. Am. Gen. Fin. Servs. of Am., Inc. (In re Gray)*, 338 B.R. 700, 702 (Bankr. E.D. Va. 2006) ("This court has addressed the

---

[3] "When the [DMV] receives an application for a certificate of title to a motor vehicle . . . showing security interests on the motor vehicle . . ., the certificate of title issued by the [DMV] to the owner of the vehicle shall show all security interests disclosed by the application." Va. Code § 46.2-636.

issue of when a security interest in a vehicle is perfected, holding that the interest is perfected on the day the title application is filed with the Virginia DMV.").

As noted by the Supreme Court of Virginia, however, "there will be occasions when the information regarding the status of liens contained in a certificate of title will be in error." *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.*, 506 S.E.2d 14, 15 (Va. 1998). A bona fide purchaser for value would prevail over the interest of a holder of a security interest in a vehicle if the certificate of title of that vehicle does not reflect the lien (in which case the title had been issued and did not disclose the lien). *Id.*

Prior to the amendments to the Virginia Code in 2005 permitting the DMV to refrain from issuing a paper title and rely instead upon electronic records, the prevailing case law held that a security interest was not perfected until it was displayed on the paper certificate of title. *See, e.g.*, *Richlands Nat'l Bank v. Smith*, 34 B.R. 749, 752 (W.D. Va. 1983). Obviously, such a holding cannot apply to electronic titling. Because the statute changed in 2005, the cases applying former rules regarding perfection of security interests in vehicles are of limited applicability.

One opinion decided prior to the electronic titling amendments which is helpful to the question before this Court was decided by the U.S. Bankruptcy Court for the Eastern District of Virginia. The case addressed "whether under Virginia law [a creditor's] security interest in debtors' motor vehicle was perfected on the date of application to DMV or the date the certificate of title was issued by DMV." *Huennekens v. Abruzzese (In re Abruzzese)*, 252 B.R. 341, 344 (Bankr. E.D. Va. 1999). In that case, the trustee brought a preference action because a lien had not appeared on a certificate of title until within the preference period. *Id.* at 343. The application for the lien had been filed with the DMV before the preference period, but the DMV delayed noting the lien on the certificate of title. *Id.* The *Abruzzese* court had to address an ambiguity created by

the language of Virginia Code § 46.2-638, because that section did "not address whether or when a security interest is perfected by a creditor prior to *issuance* of title." *Id.* at 344 (emphasis in original). The court ultimately held that "security interests created after a title is issued are determined perfected on the date an ultimately successful application is submitted to DMV." *Id.* at 345.

Similarly, under the facts of the present dispute, there appears to be an ambiguity between the prior case law and the amended text of the Virginia Code, particularly in light of the electronic titling provisions. Specifically, does the DMV's exercise of its discretion to create only an electronic record deny a party its perfected security interest status should the owner of the vehicle file for bankruptcy? Furthermore, does the filing of a bankruptcy prior to the DMV's issuance of a paper title disrupt a lienholder status as a holder of a perfected security interest in the motor vehicle? Because the DMV, and the lienholders, may rely on the creation of an electronic record, the answer to both questions is no.

### *Analysis: When Did Perfection of OneMain's Lien Occur?*

The parties agree that OneMain perfected its lien, but the heart of the dispute is when that perfection occurred. Stated differently, the resolution rests on whether OneMain perfected its lien before or after Mr. Thompson filed his bankruptcy petition. Mr. Thompson claims that OneMain perfected its lien *postpetition* on February 2, 2018, which is the date the DMV issued the paper title showing OneMain's lien. If Mr. Thompson is correct, Mr. Thompson asserts that OneMain would need to release the lien as accomplished in violation of the automatic stay.[4] If the

---

[4] Section 362(a)(4) of the Bankruptcy Code provides that the automatic stay prohibits "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). Circuits are split as to whether actions taken in violation of the automatic stay are either void or voidable, and the Court of Appeals for the Fourth Circuit has not chosen a side. *See Winters v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir. 1996). The answer to this question, however, is not necessary for the Court to resolve the current dispute.

postpetition perfection of the lien is undone, the Court should sustain the objection to claim and allow OneMain's claim as an unsecured claim.

OneMain, however, asserts the lien was perfected *prepetition* on September 28, 2016, when DealerTrack allegedly transmitted the lien information electronically to the DMV. If OneMain is correct that the lien was perfected prepetition, the Court must overrule the objection and allow OneMain's claim as a secured claim.

The certificate of title issued by the DMV postpetition and marked as "ORIGINAL" may very well be the first paper certificate of title issued noting OneMain's lien. Nothing in the record indicates otherwise, and neither party argued that a paper title had been issued prior to February 2, 2018. As noted above, the DMV may maintain merely an electronic record, and refrain from issuing a paper title until requested. *See* Va. Code § 46.2-603 (providing that when only an electronic title is created, "[a]n owner or lienholder listed on a title record so created may at any time request and the [DMV] shall provide a paper certificate of title for the vehicle."). Based on the information provided in this case, the Court concludes that the request to issue the paper title occurred after the petition.

OneMain submitted as an exhibit an "Application for Supplemental and Transfer Liens of Replacement and Substitute Titles." *See* ECF Doc. No. 24-1. The application was signed by Mr. Thompson on August 30, 2016, and requested a transfer of a lien to OneMain on the 2008 Nissan. *Id.* The application was date stamped indicating that the DMV received it on September 2, 2016. *Id.* Pursuant to Virginia Code § 46.2-639, OneMain's lien as noted on the application was perfected as of the filing of the application with the DMV on September 2, 2016. *See* Va. Code § 46.2-639 ("If application for the registration or recordation of a security interest to be placed on a

motor vehicle . . . is filed with the [DMV], it shall be deemed perfected as of the date of filing . . . .").

This conclusion is further supported by the fact that the DMV issued a certificate of title with the OneMain lien, despite any postpetition action (or allegation thereof) taken by OneMain to add its lien on Mr. Thompson's vehicle. Whether the existence of the lien was in the DMV's electronic record as a result of the application received on September 2, 2016, or through the transfer of the lien information by DealerTrack to the DMV on September 28, 2016, the electronic record of the lien prepetition demonstrated a perfected security interest. *See id.* §§ 46.2-603, 46.2-637, 46.2-639. In either scenario, the Court finds that the perfection took place prior to the petition date. The Court further finds that the filing of Mr. Thompson's bankruptcy prior to the issuance of a paper title reflecting OneMain's lien did not invalidate the perfected security interest of OneMain. OneMain properly perfected its security interest prior to the petition date and thus is the holder of a secured claim. Based on these findings, the Court overrules Mr. Thompson's objection to OneMain's claim.

The Court will issue a separate order based on the conclusions in this Opinion.

The Clerk is directed to send copies of this Opinion to the debtor, counsel for the debtor, the chapter 13 trustee, and counsel for OneMain.

Dated: May 23, 2018

_____
Rebecca B. Connelly
United States Bankruptcy Court